**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SPRINT SOLUTIONS, INC. and SPRINT COMMUNICATIONS COMPANY L.P., ) ) ) | |
| Plaintiffs, ) ) | Civil Action No: _14-CV-3539_ |
| v. ) ) ) | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| iCELL GURU, INC. and DANIEL YUSUPOV, ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. ) ) | |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs Sprint Solutions, Inc. and Sprint Communications Company L.P. (collectively "Sprint" or "Plaintiffs"), hereby file this Complaint for Damages and Injunctive Relief against iCell Guru, Inc. and Daniel Yusupov (collectively, "Defendants"), and state:

### INTRODUCTION

1.     Sprint sells wireless handsets ("Sprint Phones" or "Phones") under the brands Sprint, Boost Mobile, Virgin Mobile, payLo, and Assurance Wireless for use on Sprint's wireless network at prices significantly below the wholesale price of the Phones to make them more widely accessible to consumers.  Defendants and their co-conspirators are perpetrators of an unlawful scheme (the "Bulk Handset Trafficking Scheme" or the "Scheme") to profit by stealing the subsidies that Sprint invests in Sprint Phones.

2.      Defendants and their co-conspirators acquire the subsidized Sprint Phones through various methods, including the use of "runners" and "credit mules."[1]  As part of the Bulk Handset Trafficking Scheme, the Phones may be purchased and sold multiple times, and ultimately end up in the hands of someone other than the consumer whom Sprint intended to benefit through its subsidy.  Along the way, the Phones are "unlocked" so they will operate on a wireless network other than Sprint's.  Often the ultimate user of the phone is located overseas, in a country where the wireless service provider does not subsidize phones.

3.      Defendants' Scheme takes advantage of the fact that while Sprint subsidizes Phones to benefit consumers, wireless service providers in other countries do not.  By obtaining the Sprint Phones under false or fraudulent pretenses from Sprint and diverting them to other markets where phones are not subsidized, the Scheme converts Sprint's subsidies into profits for Defendants and their co-conspirators.  Although Defendants may participate in less than all of the steps in the process of diverting Sprint Phones, each of Defendants' acts is a violation of Sprint's rights and causes significant damage to Sprint.  Additionally, as participants in the conspiracy, Defendants are liable for the harm caused to Sprint by the entire Scheme.

4.      The Scheme causes tremendous harm to Sprint and to consumers.  In addition to the pecuniary losses caused by Defendants' theft of Sprint's subsidy investment, lost sales and market expenses, and lost expected customer revenue, Defendants' misconduct has harmed Sprint's relationships with its customers, dealers, retailers, and others.  Defendants' Scheme also involves unlawfully accessing Sprint's protected computer systems and wireless network; trafficking of Sprint's protected and confidential computer passwords; willful infringement of

---

[1]      A "Runner" is an individual or entity that makes multiple purchases of new Sprint Phones on behalf of phone traffickers like Defendants.  A "Credit Mule" is an individual or entity that signs up for wireless service with Sprint – never intending to comply with the terms of the agreement –to obtain new subsidized Sprint Phones for phone traffickers like Defendants.

Sprint's trademarks; and/or stealing legitimate customer upgrades.  Defendants have caused substantial damage to Sprint's brand, image, and reputation.

5.     Sprint seeks to recover damages for the harm caused by Defendants' Bulk Handset Trafficking Scheme, and to obtain an injunction prohibiting Defendants from continuing to perpetrate the Scheme.

6.     All conditions precedent to filing this action have been performed, waived or excused.

7.     Sprint has retained the undersigned attorneys to represent it in this action and has agreed to pay its attorneys a reasonable fee for their services.

## PARTIES, JURISDICTION, AND VENUE

8.     This is an action for damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

9.     Sprint Solutions, Inc. is a Delaware corporation, with its principal place of business in Reston, Virginia.

10.     Sprint Communications Company L.P. is a Delaware limited partnership, with its principal place of business in Overland Park, Kansas.

11.     Defendant iCell Guru, Inc. is a New York corporation with its principal place of business at 13676 Roosevelt Avenue, Flushing, New York 11354.  Upon information and belief, Defendant Daniel Yusupov is the president of iCell Guru.

12.     Defendant Daniel Yusupov is an individual and a resident of Flushing, New York and upon information and belief is the president of iCell Guru and is personally engaged in, and helped facilitate, the improper conduct described herein.  Upon information and belief, Yusupov resides at 14020 69th Road, Flushing, New York 11367.

13.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331, 1332, and 1338 because Sprint's claims for violation of the United States Trademark Act, Title 15 of the United States Code and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*. arise under federal law and because diversity exists between the parties and the amount in controversy exceeds $75,000.00 exclusive of costs, fees, and interest.   This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Sprint's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

14.     Defendant Yusupov is subject to the personal jurisdiction of this Court because he is a resident of Queens County, New York.  Defendant iCell Guru, Inc. is subject to the personal jurisdiction of this Court because it a New York corporation with its principal place of business in Queens County, New York.

15.     All Defendants are subject to the personal jurisdiction of this Court because they have conducted, engaged in and carried out business ventures within the State of New York; they have committed tortious acts within the State of New York; and they have engaged in substantial and not isolated activity within the State of New York.

16.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because the Defendants either reside in this district or a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

**SPRINT'S BUSINESS MODEL**

17.     Sprint and its affiliates offer a comprehensive range of wireless and wireline communications services to consumers, businesses, and government users.  Sprint currently serves more than 56 million customers nationwide, and is widely recognized for developing,

engineering and deploying innovative technologies.  The Sprint companies and affiliates highly value the outstanding business reputation they have worked hard to develop.

18.     Sprint's wireless program enables Sprint customers to choose from a variety of monthly voice and data plans for use on cutting edge devices on the Sprint wireless network.  In addition to being available through Sprint online and in its stores, Sprint Phones and wireless service are sold through authorized Sprint dealers and retailers, with whom Sprint has contractual relationships, around the country.

19.     Sprint's business model is based upon Sprint's ability to deliver affordable, innovative, and desirable products and services to consumers.  Therefore, Sprint subsidizes its customers' acquisition of the Sprint Phones by selling its Phones for substantially less than the wholesale prices Sprint pays for the Phones from the manufacturers of the Phones.  Sprint recoups this subsidy through revenue earned on the sale of Sprint service, which customers must use to transmit and receive voice, text, and data on the Sprint Phones.

20.     Sprint Phones are sold subject to terms and conditions ("Terms and Conditions") which conspicuously restrict and limit the sale and use of the Phones.  A copy of the Terms and Conditions is attached hereto as **Exhibit A**.  These Terms and Conditions are set forth in printed inserts that are included with the purchase of every Sprint Phone.

21.     To make its customers' experience as convenient as possible, Sprint provides various methods for its customers to manifest their agreement to the Terms and Conditions, depending on the type of service they obtain and the method and sales channel through which they activate their service.  In some cases, customers are asked to sign a written contract, in others they acknowledge their agreement orally by phone, and in other situations they may indicate their agreement by clicking the appropriate buttons on a website.  In the case of pay-as-

you-go or prepaid service, customers sometimes indicate their agreement by purchasing a Phone in a package that conspicuously indicates that their purchase or use of the phone constitutes their agreement to the Terms and Conditions. All of the methods used by Sprint for obtaining its customers' agreement to the Terms and Conditions are legally valid and appropriate, and the Terms and Conditions constitute a valid and binding contract between Sprint and each of its customers.

22.     Sprint is able to offer its Phones to customers at reduced prices only if the Phones are used as intended on the Sprint wireless network. Manufacturers that produce wireless phones for Sprint install proprietary software, requested and paid for by Sprint, on the Sprint Phones. Among other things, this software is intended to prevent the Phones from being used outside the Sprint network.

23.     Because the Bulk Handset Trafficking Scheme requires the trafficked Sprint Phones to operate on a network other than Sprint's, Defendants or their co-conspirators must remove or alter this software using a process called "unlocking." Federal regulators recently revoked an exemption to the Digital Millennium Copyright Act, 17 U.S.C. § 1201, *et seq.*, ("DMCA") for wireless phone unlocking, paving the way for unlockers to be criminally prosecuted under the DMCA, based upon the explanation that:

> the practice of locking cell phones is an essential part of the wireless industry's predominant business model, which involves subsidizing the cost of wireless handsets in exchange for a commitment from the customer that the phone will be used on that carrier's service so that the subsidy can eventually be recouped by the carrier. CTIA alleged that the industry has been plagued by ''large scale phone trafficking operations'' that buy large

quantities of pre-paid phones, unlock them, and resell them in foreign markets where carriers do not subsidize handsets.

*Exemption to Prohibition on Circumvention of Copyright Protection Systems for Access Control Technologies*, 77 Fed. Reg. 65260, 65265 (Oct. 26, 2012) (amending 37 C.F.R. § 201.40).  Like all wireless carriers in the United States, Sprint has policies in place to unlock Phones for legitimate customers in certain circumstances, to allow the customers to continue to use their Sprint Phone for international travel or if they port their service to another carrier with compatible technology.  *See* 47 U.S.C. § 251(b)(2).

24.    Wireless technology is constantly changing and improving, and the wireless industry is intensely competitive.  Sprint expends substantial resources to maintain its position as an industry leader and to ensure that its network, handsets, and all of its products and services are at the cutting edge of the latest technological developments.  Providing its customers with the highest quality and most advanced technology is a key differentiator for Sprint and central to its business strategy.  For example, Sprint was the first national wireless carrier in the United States to offer 4G service, and Sprint continues to aggressively develop, engineer, and deploy innovative technologies to benefit its customers.

25.    Sprint invests heavily in efforts to provide its customers with the most up-to-date wireless handsets, and subsidizes most or all of the cost of purchasing a new phone for its customers.  Sprint makes subsidized phones available to new customers when they initiate wireless service, and also provides new subsidized phones to existing customers at regular intervals.  According to its public securities filings, Sprint spent more than $6.6 billion on handset subsidies in 2012, and invested an additional $2 billion in subsidies in the first quarter of

2013.  It is those funds that Defendants and their co-conspirators steal through their Bulk Handset Trafficking Scheme.

26.     Sprint made a particularly significant and widely publicized investment for its customers in the smartphone market.  As reported in The Wall Street Journal, Sprint agreed to buy 30.5 million iPhones from Apple over four years, at a cost of more than $20 billion.  Indeed, Sprint has staked a significant amount of its business on the iPhone brand.  Copies of newspaper articles discussing Sprint and the iPhone are attached hereto as **Composite Exhibit B**.  Sprint's subsidized iPhones are a particularly attractive and lucrative target for Defendants and their co-conspirators' Bulk Handset Trafficking Scheme.

27.     Sprint is continuously working to provide its customers with the latest in communications technology.  For example, Sprint recently implemented a massive "Network Vision" program to migrate millions of customers from the Nextel network, which used outdated iDEN technology, and to upgrade more than 25,000 wireless transmission facilities around the country to the latest 4G LTE transmission technology.  Sprint's practice of subsidizing handsets for existing customers is an essential part of its business model, and facilitates the upgrading of Sprint's network by helping to migrate customers from older technology phones to newer models.  Many of the various wireless transmission standards are not compatible with each other, so Sprint's customers need to switch to new phones before Sprint can transition its network to the latest standard.  New handsets are also needed to utilize different radio frequencies and take advantage of Sprint's acquisition of wireless spectrum from various other companies.

28.     By stealing the subsidies in handset upgrades that Sprint intends to benefit its customers, Defendants' Scheme harms Sprint not only by misappropriating its subsidy investment, but also by impeding Sprint's ability to upgrade its equipment and network facilities.

Sprint offers subsidized Phone upgrades to its customers every 12 to 24 months to meet their high expectations and strong demand for the most technologically-advanced handsets, features, and services.  These upgrades are critical to Sprint's network speed and efficiency.

<strong>SPRINT'S TRADEMARK RIGHTS</strong>

29.     Sprint Communications Company L.P. owns federal trademark registrations for the standard character and stylized Sprint® marks (collectively, the "Sprint Communications Marks").   Sprint Solutions, Inc. has been assigned the right to use and enforce the Sprint Communications Marks.  Copies of the certificates of registration issued by the United States Patent and Trademark Office are attached hereto as **Composite Exhibit C**.  The stylized Sprint Communications Marks are depicted below:

 

30.     Sprint has been assigned the right to use and enforce the standard character and stylized Virgin Mobile, payLo, Assurance Wireless and Boost Mobile trademarks (collectively, the "Assigned Marks"), the latter of which are depicted below:

  



The Sprint Communication Marks and Assigned Marks will collectively be referred to as the "Sprint Marks".

31.     Sprint uses the Sprint Marks on and in connection with its telecommunications products and services.

32.     Sprint Marks have become an intrinsic and essential part of the valuable goodwill and property of Sprint, who protects the Sprint Marks.  The Sprint Marks are well established and well known to customers and the trade as symbols identifying and distinguishing Sprint's products and services, and signifying distinctive products and services of high quality.  Only Sprint and its expressly authorized, affiliated agents are permitted to use the Sprint Marks.  The Sprint Marks are valid, distinctive, protectable, famous, have acquired secondary meaning, and are associated exclusively with Sprint.

## DEFENDANTS' MISCONDUCT

33.     Sprint has discovered that, although large quantities of its Phones are being purchased throughout the United States, a significant number of these Phones are not being used on the Sprint network.

34.     Instead, entities and individuals such as Defendants and their co-conspirators, with no intention of lawfully connecting to or using the Sprint wireless network, are fraudulently acquiring and reselling Sprint Phones in bulk quantities.  The Phones are acquired, either directly by Defendants or through their co-conspirators, and then sold for a substantial profit and shipped directly overseas, where they can be used on other wireless carriers' networks, or shipped to other domestic traffickers, who often add them to larger shipments headed overseas.  The Phones are usually taken out of their original packaging, and all accessories, warranties, and manuals are removed, before being shipped overseas.  The Phones are often unlocked by Defendants or their co-conspirators, to raise their value and prepare them for use on foreign carriers. Defendants undertake these actions for profit.

35. Once a Sprint Phone is unlocked and shipped overseas to be used on other wireless networks, Sprint no longer has a revenue source to recoup its investment on that Phone.

36. Defendants are knowingly and willfully engaged in an enterprise that traffics in and resells Sprint Phones. Defendants have acquired and sold large quantities of Sprint Phones through various co-conspirators. While the complete extent of Defendants' activities in the Bulk Handset Trafficking Scheme is not yet known, Defendants are actively involved in several integral components of the conspiracy.

37. Defendants are not authorized Sprint dealers or retailers.

38. Defendants operate as bulk international traffickers of new Sprint Phones. Sprint first identified Defendants' illegal activities through their LinkedIn and CellPex.com advertisements soliciting to buy an unlimited quantity of new iPhones. A sample of Defendants' advertisements is attached hereto as **Exhibit D**.

39. In October 2013, undercover investigators for Sprint initiated communication to the email address in Defendants' ads, icellguru@gmail.com. The investigator offered to sell Defendants new Sprint iPhone 4S handsets for $250.00 each. Copies of the October 2013 emails are attached hereto as **Exhibit E**. The investigator subsequently received a call from "Danny," who upon information and belief is Defendant Daniel Yusupov. Defendant Yusupov stated that he is always looking to buy new Phones in quantity and a few days later he arranged to meet the investigator in person to purchase new Sprint iPhones.

40. On or about October 31, 2013, Defendant Yusupov directed the investigator to meet him the following day at an address in Flushing, New York. Copies of the October 31 – November 1, 2013 text communications between Defendant Yusupov and the investigator are attached hereto as **Exhibit F**. At the meeting, the investigator offered Defendant Yusupov five

(5) brand new Sprint iPhone 4S handsets for $250.00 each.  Defendant Yusupov inspected each phone, confirmed that they were new Sprint iPhones, and agreed to the price; he paid for the phones via corporate check on Defendant iCell Guru's Chase Bank account in the amount of $1,250.00 and signed the check "Daniel Yusupov."

41.     Sprint's investigation of the post-sale history of the Phones sold to Defendants confirmed that all five (5) new Sprint iPhones disappeared and were never activated on the Sprint wireless network.  On information and belief, these Phones were resold as new and shipped overseas, unlocked to be unlocked, and used on a network other than Sprint.

42.     During the meeting, the investigator and Defendant Yusupov discussed future deals of 250 or more Phones per transaction and Defendant Yusupov stated that he buys new Phones in bulk and resells them primarily overseas.  At the close of the meeting, Defendant Yusupov confirmed his interest in buying large quantities of Sprint iPhones and asked, "At what price would I have to be to take the entire lot?"  *See* **Exhibit F**.

43.     Over the next several weeks, Defendant Yusupov communicated regularly with the investigator to arrange a large transaction.  Copies of the November 11, 2013 – January 28, 2014 text communications between Defendant Yusupov and the investigator are attached hereto as **Exhibit G**.   During their numerous communications, Defendant Yusupov repeatedly confirmed that he resells the new handsets to overseas and to other traffickers and that he regularly works with them to complete large deals in new Phones.  *Id.*

44.     After extensive negotiations, on or about December 2-3, 2013, Defendant Yusupov confirmed that he would purchase 135 new Sprint iPhone 5S handsets at $350.00 each and 313 new Sprint iPhone 4S handsets at $180.00 each, totaling 448 brand new Sprint handsets for a price of $103,590.00.  *Id.*  Defendants stated that they would pay via wire transfer and

provided a copy of their New York State Department of Taxation and Finance Certificate of Authority.  *Id.*; a copy of Defendant iCell Guru's New York State Department of Taxation and Finance Certificate of Authority is attached hereto as **Exhibit H**.  On information and belief, Defendant acquired the 135 new Sprint iPhone 5S handsets from other sources and resold and shipped them overseas, unlocked or to be unlocked.

45.    On information and belief, Defendants participated in similar agreements to defraud Sprint in other large transactions with many more individuals and/or induced many individuals to breach contracts with Sprint by persuading them to sell their Sprint Phones to Defendants for unlocking, resale and shipping overseas.

## SUBSTANTIAL HARM CAUSED BY DEFENDANTS' MISCONDUCT

46.    Defendants' actions substantially harm Sprint in several ways, including *inter alia*: (1) Sprint is deprived of the opportunity to recoup its subsidies on the sale of its Sprint Phones; (2) Sprint is deprived of the opportunity to earn profits by providing wireless service to legitimate Sprint consumers; (3) Sprint is hampered in its ability to migrate its customers from older to newer technology through legitimate timely upgrades, which negatively impacts the efficiency of Sprint's wireless network speed; (4) Sprint's brand, image and reputation are harmed by the inability to timely remove old Phone models from circulation through legitimate upgrades; and (5) Defendants' infringement of the Sprint Marks causes significant ongoing and irreparable losses and harm to Sprint's brand, image, and reputation.  All of these factors may contribute to Sprint's loss of competitive edge in the cellular phone industry.

47.    The conduct of Defendants, their unknown co-conspirators, and others who engage in the unlawful bulk acquisition and sale of Sprint Phones has also resulted in shortages of available Sprint Phones.  This misconduct substantially harms Sprint and its relationship with

dealers, retailers and consumers because Sprint is not able to supply sufficient handsets to satisfy the demand from legitimate consumers who, as a result, go elsewhere for their telecommunications services.  This is particularly true in the case of the popular iPhones and Samsung Galaxy models.

48.     Sprint suffers additional, irreparable harm when its Phones are removed from the original packaging and altered because Sprint is deprived of the means to control the quality of its product.  This becomes particularly damaging where a potential legitimate Sprint customer acquires a Phone from Defendants that the customer believes is a genuine Sprint Phone, with all of the attendant benefits and is later disappointed in Sprint because the Phone does not work as intended on the Sprint network.  Moreover, the process of unlocking and reselling a Sprint Phone voids the manufacturer's warranty on the device.  The unlocked repackaged Sprint Phones are usually resold by Defendants or their co-conspirators without the original manufacturer's warranty documentation.  Both consumers and Sprint are harmed when a Sprint Phone that has been altered or sold by Defendants or their co-conspirators is submitted for warranty repair. Consumers who purchase Sprint Phones from Defendants or their co-conspirators are unable to obtain warranty service in the event they experience problems with their Phones.  As a result, Sprint's reputation suffers further.

49.     Additionally, confused customers, relying on the Sprint Marks on the Phones they purchased from Defendants, look to Sprint to resolve their questions and issues.  Sprint incurs substantial costs associated with calls to its customer relations department.  Sprint's reputation is further damaged by its inability to assist those consumers because despite bearing the Sprint Marks, it is no longer a Sprint Phone and Defendants' actions voided the warranties.

50.     Defendants' conduct has resulted in the dilution of the Sprint Marks; substantial harm to Sprint's business reputation and goodwill; a greater likelihood of confusion, mistake, and deception as to the source of origin of Sprint products unlawfully sold by the Defendants and confusion as to what if any relationship exists between Sprint and Defendants.

51.     On information and belief, Defendants' and their co-conspirators are also engaging in various schemes that usurp legitimate customer upgrades by, *inter alia*, fraudulently requesting subsidized handset upgrades on legitimate Sprint customer accounts and retaining the new devices while the consumers are left with an outdated device.   Defendants' practice of stealing upgrade Phones misappropriates the subsidy intended for the customer and hinders Sprint's objective of regularly migrating customers to newer devices that work more effectively on Sprint's updated networks.   This migration cannot occur when older devices remain in consumer circulation longer than intended. Defendants' conduct causes harm to Sprint's reputation with its customers, whose devices no longer work as effectively on Sprint's network and other customers, who were defrauded out of their subsidized Phone upgrade, no longer have the ability to upgrade their phone if it breaks, and may blame Sprint and leave for another service provider.

**CIVIL LITIGATION AGAINST OTHER PHONE TRAFFICKERS**

52.     Federal courts have recognized that conduct similar to Defendants' conduct is unlawful.

53.     In addition to Sprint, T-Mobile USA, Inc. ("T-Mobile"), TracFone Wireless, Inc. ("TracFone"), Nokia Corporation ("Nokia"), and AT&T Mobility LLC ("AT&T") have each filed multiple lawsuits in numerous federal courts across the country against other defendants similarly engaged in the practice of defrauding legitimate consumers by acquiring wireless

15

telephones in bulk and reselling them for profit.  Each of those companies has succeeded in obtaining Final Judgments and Permanent Injunctions against phone traffickers in those cases. Copies of several examples of Final Judgments and Permanent Injunctions are attached hereto as **Composite Exhibit I**.  A defendant in one case who continued trafficking in phones in violation of an injunction issued by the U.S. District Court for the Southern District of Texas was charged with criminal contempt of court and sentenced to serve 57 months in prison.  Copies of the Memorandum Opinion and Order of Contempt, Application for Criminal Contempt, the Order finding cause to believe the defendant is guilty of criminal contempt, and Judgment of Criminal Contempt are attached hereto as **Composite Exhibit J**.

## CRIMINAL INVESTIGATION AND PROSECUTION
## OF OTHER PHONE TRAFFICKERS

54.    Phone traffickers like Defendants have been the subject of numerous criminal investigations and prosecutions across the country.  Some recent examples are:

a.    In March, 2013 the California Attorney General charged two individuals with trafficking nearly $4M in wireless phones to Hong Kong over an 8 month period.

b.    On August 21, 2012, federal Homeland Security agents and SWAT teams conducted a raid on facilities operated by handset trafficker Ace Wholesale and on the home of the company's CEO, Jason Floarea.  Later the same day, Sprint filed suit in federal court against Ace Wholesale, Floarea, and several affiliated entities and persons asserting handset trafficking claims similar to those asserted here.

c.    On or about February 25, 2013, federal law enforcement authorities, including agents from the Federal Bureau of Investigation, the United States Secret Service,

and the Bureau of Alcohol, Tobacco, Firearms and Explosives, raided a warehouse belonging to a phone trafficking company called Wireless Buybacks in Elkridge, Maryland, pursuant to a search warrant and found the facilities were being used to harbor stolen Sprint Phones.  Sprint filed suit against Wireless Buybacks and its affiliates the following day.

    d.    An FBI sting operation in Philadelphia that began with wireless phone trafficking resulted in the conviction of 16 individuals on terrorism charges, when it turned out that the proceeds from their phone trafficking and other illegal conduct was being funneled to the terrorist organization Hezbollah.

Copies of court documents, press releases, and news reports regarding these incidents are attached hereto as **Composite Exhibit K.**

<u>**COUNT ONE**</u>

**UNFAIR COMPETITION**

55.    Sprint reasserts the allegations set forth in Paragraphs 1 through 51 above as though fully set forth herein.

56.    Defendants' conduct in acquiring and/or inducing others to acquire the Phones, disabling or unlocking, inducing others to disable or unlock, and/or assisting others to disable or unlock the Phones, and reselling and/or assisting others to resell the Phones as new for activation on other wireless networks constitutes unfair competition under the common law of the State of New York.

57.    Defendants' conduct in selling, inducing others to sell, and/or assisting others to sell unlocked Sprint Phones for the purpose of being resold, which undermines Sprint's subsidy program, constitutes unfair competition under the common law of the State of New York.

58.     Defendants' use of at least one of the Sprint Marks in connection with the sale of unlocked, counterfeit Sprint Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' counterfeit products and services, and the relationship between Sprint and Defendants.  Thus, Defendants have also engaged in unfair competition with Sprint in violation of the common law of the State of New York by selling and/or offering, and promoting their products with the intention of trading upon the goodwill established by Sprint and are thereby misappropriating the benefits of substantial effort and money expended by Sprint in establishing its rights in and to the Sprint Marks.

59.     Defendants' actions were done in bad faith; they were intentional, malicious, and willful, and have caused substantial harm to Sprint.

60.     Sprint is entitled to appropriate relief as prayed for hereinafter, including injunctive relief.

## COUNT TWO

### TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS AND ECONOMIC ADVANTAGE

61.     Sprint reasserts the allegations set forth in Paragraphs 1 through 51 above as though fully set forth herein.

62.     A business relationship, and an expectancy of business relationships, exists between Sprint and authorized dealers of Sprint Phones.

63.     A business relationship, and an expectancy of business relationships, exists between Sprint and authorized retailers of Sprint Phones.

64.     A business relationship, and an expectancy of business relationships, exists between Sprint and the purchasers and prospective purchasers of its Sprint Phones and wireless service.

18

65.     There is a high probability of future economic benefit to Sprint as a result of these current and prospective business relationships.

66.     Defendants have knowledge of and have intentionally and unjustifiably interfered with, and/or have knowingly facilitated a conspiracy to interfere with, these current and prospective business relationships between Sprint, authorized dealers and retailers who sell Sprint products, and legitimate Sprint customers or prospective customers.

67.     Specifically, but without limitation, Defendants knew that Sprint has business relationships, and an expectancy of business relationships, with legitimate consumers of Sprint Phones and wireless service.  Defendants interfered with these relationships by engaging in their Bulk Handset Trafficking Scheme and causing, at least in part, Sprint to have an insufficient supply of Sprint Phones available to meet legitimate consumer demand.

68.     Defendants also knew that Sprint has business relationships with authorized dealers and retailers of Sprint Phones to provide said dealers with sufficient quantities of Sprint Phones for their legitimate consumers' use exclusively on Sprint's wireless network. Defendants' Bulk Handset Trafficking Scheme has resulted in substantial numbers of Sprint Phones that are never activated on Sprint service and has further caused shortages of available Sprint Phones, thereby substantially harming Sprint and its relationship with its authorized dealers and retailers because Sprint is unable to supply dealers with sufficient Phones to satisfy the demands from legitimate consumers.

69.     Defendants are intentionally interfering with Sprint's business relationships and prospective advantages through improper means and in violation of the law.

70.     Defendants engaged in the acts of interference set forth herein with a conscious desire to prevent the relationships from occurring or continuing, or Defendants knew that the interference was certain or substantially certain to occur as a result of their conduct.

71.     Defendants acts injured Sprint's business relationships.

72.     Sprint has been proximately damaged and continues to be damaged as a result of Defendants' interference.

73.     There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' tortious interference.

<u>COUNT THREE</u>

**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**

74.     Sprint reasserts the allegations set forth in Paragraphs 1 through 51 above as though fully set forth herein.

75.     A contractual relationship for a specific term exists between Sprint and authorized dealers and retailers of Sprint Phones.

76.     A contractual relationship for a specific term exists between Sprint and its customers, the purchasers of its Sprint Phones and wireless service.

77.     Defendants have knowledge of and have intentionally and unjustifiably interfered with, and/or have knowingly facilitated a conspiracy to interfere with, these contracts between Sprint, and its authorized dealers and retailers and legitimate Sprint customers.

78.     Specifically, but without limitation, Defendants knew that Sprint has contractual relationships with legitimate consumers of Sprint Phones and wireless service.  Defendants interfered with these relationships by, *inter alia*, inducing the Runners and Credit Mules or other purchasers of Sprint products to breach their contracts with Sprint.

20

79.     Defendants also knew that Sprint has contractual relationships with authorized dealers and retailers of Sprint Phones under which these dealers and retailers will promote and sell Sprint products solely for activation on the Sprint network.  On information and belief, Defendants and/or the their co-conspirators induce authorized Sprint dealers and retailers to breach their agreements with Sprint and provide new subsidized Sprint Phones to Defendants for a purpose other than activation on the Sprint network.

80.     Defendants engaged in the acts of interference set forth herein with a conscious desire to induce breach of contract, or Defendants knew that breach of contract was certain or substantially certain to occur as a result of their conduct.

81.     Sprint has been proximately damaged and continues to be damaged as a result of Defendants' interference.

82.     There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' tortious interference.

**<u>COUNT FOUR</u>**

**CONSPIRACY TO COMMIT FRAUD AND FRAUDULENT MISREPRESENTATION**

83.     Sprint reasserts the allegations set forth in Paragraphs 1 through 51 above and Paragraphs 101-107, 109-115 below as though fully set forth herein.

84.     An agreement and conspiracy existed and continues to exist between and among the Defendants and other co-conspirators to unlawfully acquire in bulk, traffic, and resell unlawfully unlocked and altered Sprint Phones under at least one of the Sprint Marks, which results in federal common law and statutory trademark infringement, common law unfair competition, contributory trademark infringement, tortious interference with business and contractual relations and prospective economic advantage, common law fraud, fraudulent

misrepresentation, unjust enrichment, and violations of the Computer Fraud and Abuse Act, among other things.

85.     Each Defendant knowingly agreed to engage, and did engage, in one or more overt acts in pursuit of the conspiracy as set forth with more particularity in this Complaint.

86.     Sprint has been proximately damaged by the conspiracy and Defendants' actions in furtherance thereof.

87.     There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' conspiracy.

## COUNT FIVE

### UNJUST ENRICHMENT

88.     Sprint reasserts the allegations set forth in Paragraphs 1 through 51 above as though fully set forth herein.

89.     By bulk acquisition of Sprint Phones at less than the manufacturer cost of the Phones for use on wireless networks other than Sprint's network, Defendants have obtained benefits from Sprint which have caused significant harm to Sprint and led to significant financial gain to Defendants through their resale of the acquired Sprint Phones.

90.     Defendants have acquired the benefits voluntarily and with full knowledge of the benefits.

91.     Defendants have retained the benefits under such circumstances that make it unjust and inequitable for Defendants to retain the benefits without paying Sprint the value of the benefits Defendants acquired.

92.     There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' unjust enrichment.

## COUNT SIX

### CONSPIRACY TO INDUCE BREACH OF CONTRACT

93.     Sprint reasserts the allegations set forth in Paragraphs 1 through 51 above as though fully set forth herein.

94.     Defendants solicit Runners and Credit Mules to purchase Sprint Phones in bulk for the benefit of Defendants.

95.     Defendants' active solicitation of Runners and Credit Mules includes contacting these individuals and requesting that they obtain specific brands and models.

96.     Sprint had valid and existing contracts with these Runners and Credit Mules and other original purchasers of the Phones ("Purchasers").

97.     Defendants had knowledge of the contracts between Sprint and Purchasers, and intended to, and in fact did, induce Purchasers to breach their contracts with Sprint.

98.     The breaches of the contracts were proximately caused by Defendants' misconduct.

99.     Sprint suffered damages as a result.

### COUNT SEVEN

### COMMON LAW FRAUD

100.    Sprint reasserts the allegations set forth in Paragraphs 1 through 51 above as though fully set forth herein.

101.    As part of their Bulk Handset Trafficking Scheme, each of the Defendants, directly or indirectly through other co-conspirators, regularly and systematically misrepresent to Sprint that the Phones are being acquired for a legitimate purpose, that the Phones will be used

by Defendants or other legitimate consumers on Sprint's wireless network, and that they will perform in accordance with the Terms and Conditions.

102.    On information and belief, each Defendant participated in these agreements to defraud Sprint with many individuals and/or induced many individuals to breach contracts with Sprint by persuading them to sell their Sprint Phones to Defendants for unlocking, resale and shipping overseas.

103.    When Defendants, directly or through their co-conspirators acquire Sprint Phones as part of their Bulk Handset Trafficking Scheme, they do not intend to use the Phones for a legitimate purpose or to activate them or maintain them as active on Sprint's wireless network, or otherwise perform in accordance with the Terms and Conditions.

104.    Defendants and their co-conspirators know that they are required to activate for use the Sprint Phones on the Sprint wireless network, pay the monthly service charges, and otherwise comply with the Terms and Conditions.

105.    Defendants intended for Sprint to rely on their misrepresentations and/or the misrepresentations of their co-conspirators to allow Defendants to acquire and unlock the Phones for improper purposes.

106.    Sprint's reliance on Defendants' and their co-conspirators' misrepresentations was reasonable under the circumstances.

107.    Sprint has been damaged and continues to suffer damages as a result of Defendants' actions.

108.    There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' fraud.

## COUNT EIGHT

**FRAUDULENT MISREPRESENTATION**

109.    Sprint reasserts the allegations set forth in Paragraphs 1 through 51 above as though fully set forth herein.

110.    As part of their Scheme, each of the Defendants, directly or through their co-conspirators, regularly and systematically misrepresent to Sprint that the Phones are being acquired for a legitimate purpose and would be used by Defendants or other legitimate consumers on Sprint's wireless network.

111.    On information and belief, each Defendant participated in these agreements to defraud Sprint with many individuals and/or induced many individuals to breach contracts with Sprint by persuading them to sell their Sprint Phones to Defendants for unlocking, resale and shipping overseas.

112.    When Defendants, directly or through their co-conspirators, acquire a Sprint Phone, they do not intend to use the Phone on the Sprint wireless network.

113.    Defendants and their co-conspirators knew that they were required to activate for use the Sprint Phones on the Sprint wireless network.

114.    Defendants and their co-conspirators intended for Sprint to rely on these misrepresentations to allow Defendants and their co-conspirators to acquire and unlock the Phones for improper purposes.

115.    Sprint's reliance on Defendants' and their co-conspirators' misrepresentations was reasonable under the circumstances.

116.    Sprint has been damaged and continues to suffer damages as a result of Defendants' and their co-conspirators' actions.

117.    There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' and their co-conspirators' fraudulent misrepresentations.

## COUNT NINE

### TRAFFICKING IN COMPUTER PASSWORDS
### 18 U.S.C. § 1030(a)(6)

118.    Sprint reasserts the allegations set forth in Paragraphs 1 through 51 above as though fully set forth herein.

119.    The Sprint Phones that are trafficked by Defendants are loaded with confidential codes/passwords that access: (a) Sprint's national telecommunications computer network to make and receive wireless voice calls and to transmit data, and (b) Sprint's computer billing network (collectively, "Sprint's protected computer networks").  In other words, the Phones act as a gateway to Sprint's protected computer networks.  Sprint protects access to these protected computer networks through, among other things, the confidential codes/passwords contained in the Phones.

120.    In addition, manufacturers that produce wireless phones for Sprint install proprietary and confidential software, requested and paid for by Sprint, on the Sprint Phones to lock the Phones to Sprint's protected computer networks and prevent the Phones from being used outside the Sprint network.[2]

121.    Defendants use fraud and misrepresentation to acquire the encoded Phones from Sprint, which are connected and locked to Sprint's protected computer networks when purchased

---

[2]    Like all wireless carriers in the United States, Sprint has narrowly tailored policies in place to unlock Phones for legitimate customers in certain circumstances,  Defendants' and their co-conspirators' activities do not fall under these narrowly tailored exceptions and, therefore, their unlocking activities are unauthorized.  Further, to unlock a Sprint Phone, a confidential code/password must be entered into Sprint's protected computer networks.

from Sprint, and, therefore, the agreement is void.  As such, Defendants' access into Sprint's protected computer networks is not authorized in any way.

122.    Upon information and belief, once Defendants illicitly acquire the Sprint Phones, they use Sprint's confidential codes/passwords to hack into and gain additional access to Sprint's protected computer networks.  This additional access into Sprint's protected computer networks is not authorized in any way.  Upon information and belief, Defendants share these confidential codes/passwords and methodologies for unlocking Sprint Phones among themselves and with their co-conspirators.

123.    Upon information and belief, Defendants acquire the unlocking codes/passwords and methodologies for unlocking Sprint Phones by misrepresenting to Sprint either directly or through one of their co-conspirators, that the Phones are being acquired and unlocked for a legitimate purpose for use by legitimate consumers on Sprint's computer networks, when in fact, they are not.

124.    Upon information and belief, Defendants unlawfully hack into Sprint's protected computer networks using Sprint's confidential codes/passwords to: (1) perform various tests to confirm that the Phone they are purchasing is, in fact, active on Sprint's wireless network; and/or (2) unlock the Sprint Phone, which requires the manipulation and oftentimes permanent deletion of the proprietary software that is installed in Sprint Phones and unauthorized changes to Sprint's protected computer networks, so that the Sprint Phone will operate on a wireless network other than Sprint's.

125.    Through their Bulk Handset Trafficking Scheme, Defendants are knowingly trafficking in the confidential codes/passwords contained in the Phones with the intent to defraud Sprint.

126.    Defendants' transfer of the Phones and confidential codes to others constitutes "trafficking" of the codes as defined in 18 U.S.C. § 1029 in that the codes/passwords were transferred, or otherwise disposed of, to others, or Defendants obtained control of the codes/passwords with intent to transfer or dispose of them.

127.    Defendants' trafficking of the Phones substantially affects interstate commerce and communication in that the codes/passwords contained in the Phones are trafficked over the internet, throughout the United States, and around the world, and Sprint's protected computer networks are used in and affect interstate commerce and communication, and provide wireless communications services pursuant to licenses issued by the Federal Communications Commission.

128.    Defendants' trafficking of Sprint's codes/passwords has caused and will continue to cause Sprint to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively --  substantially in excess of $5,000 over a one-year period.

129.    With respect to loss, Sprint has lost subsidy investments and spent well in excess of $5,000 responding to Defendants' contacts with Sprint customer service, investigating and assessing the possible impairment to the integrity of its protected computer networks, taking action to counteract Defendants' theft, and conducting a damage assessment regarding Defendants' collection and dissemination of Sprint Phones and codes/passwords, as well as tracking down fraudulently sold Phones.

130.   With respect to damage, by infiltrating the Sprint computer and telecommunications network and collecting and disseminating the illegally activated Phones and codes/passwords, Defendants have substantially impaired the integrity of Sprint's protected computer networks in an amount in excess of $5,000.  Moreover, Defendants' actions have deprived Sprint of the means to control the quality of its product and service.

131.    Defendants' activities constitute trafficking in computer passwords in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(6).

132.    Defendants' conduct is intentional, malicious and willful.

133.    Pursuant to 18 U.S.C. § 1030(g), Sprint is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above,  and because Defendants' conduct involves at least one of the factors identified in 18 U.S.C § 1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to Sprint and its customers as a result of Defendants' conduct during any one year period aggregated at least $5,000 in value.

## COUNT TEN

### UNAUTHORIZED ACCESS
### 18 U.S.C. § 1030(a)(5)(C)

134.    Sprint reasserts the allegations set forth in Paragraphs 1 through 51 above as though fully set forth herein.

135.    The Sprint Phones that are acquired by the Defendants directly and/or from their co-conspirators in furtherance of the Bulk Handset Trafficking Scheme are loaded with codes/passwords that access: (a) Sprint's national telecommunications computer network to make and receive wireless voice calls and to transmit data, and (b) Sprint's computer billing network (collectively, "Sprint's protected computer networks").

136.    In addition, manufacturers that produce wireless phones for Sprint install proprietary and confidential software, requested and paid for by Sprint, on the Sprint Phones to

lock the Phones to Sprint's protected computer networks and prevent the Phones from being used outside the Sprint network.[3]

137.   Sprint Phones are connected to and activated on Sprint's protected computer networks when purchased from Sprint.

138.   In furtherance of their Bulk Handset Trafficking Scheme, Defendants and/or their co-conspirators use fraud and misrepresentation to acquire Phones from Sprint, and, in so doing, void the agreement; as such, Defendants' access to the Phones and into Sprint's protected computer networks is not authorized in any way.

139.   Upon information and belief, once Defendants illicitly acquire the Sprint Phones, they use confidential codes/passwords to hack into and gain additional access to Sprint's protected computer networks.  This additional access into Sprint's protected computer networks is not authorized in any way.

140.   Upon information and belief, Defendants acquire the unlocking codes/passwords and methodologies for unlocking Sprint Phones by misrepresenting to Sprint either directly or through one of their co-conspirators that the Phones are being acquired and unlocked for a legitimate purpose for use by legitimate consumers on Sprint's computer networks, when in fact, they are not.

141.   Upon information and belief, Defendants unlawfully hack into Sprint's protected computer networks using confidential codes/passwords to: (1) perform various tests to confirm that the Phone they are purchasing is, in fact, active on Sprint's wireless network; and/or (2)

---

[3]      Like all wireless carriers in the United States, Sprint has narrowly tailored policies in place to unlock Phones for legitimate customers in certain circumstances,  Defendants' and their co-conspirators' activities do not fall under these narrowly tailored exceptions and, therefore, their unlocking activities are unauthorized.  Further, to unlock a Sprint Phone, a confidential code/password must be entered into Sprint's protected computer networks.

unlock the Sprint Phone, which requires the manipulation and oftentimes permanent deletion of the proprietary software that is installed in Sprint Phones and unauthorized changes to Sprint's protected computer networks, so that the Sprint Phone will operate on a wireless network other than Sprint's. Defendants are knowingly, intentionally, and with the intent to defraud, facilitating the unauthorized access of Sprint's protected computer networks.

142.  Defendants' hacking of Sprint's protected computer systems allows them to improperly steal Sprint's subsidy investment in its Phones.

143.  Sprint's protected computer systems are "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

144.  Defendants' activities substantially affect interstate commerce and communication in that the Phones are trafficked over the internet, throughout the United States, and around the world, and Sprint's computer system and telecommunications network are used in and affect interstate commerce and communication, and provide wireless communications services pursuant to licenses issued by the Federal Communications Commission.

145.  Defendants' unauthorized access of Sprint's protected computer systems has caused and will continue to cause Sprint to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively --  substantially in excess of $5,000 over a one-year period.

146.  With respect to loss, Sprint has lost subsidy investments in the trafficked Phones and spent well in excess of $5,000 investigating and assessing the possible impairment to the integrity of its protected computer systems, taking action to counteract Defendants' theft, and

conducting a damage assessment regarding Defendants' collection and dissemination of Sprint Phones, as well as tracking down fraudulently sold Phones.

147.    With respect to damage, by infiltrating the Sprint computers systems and collecting and disseminating the illegally trafficked Phones, Defendants have substantially impaired the integrity of Sprint's systems in an amount in excess of $5,000.   Moreover, Defendants' actions have deprived Sprint of the means to control the quality of its product and service, and have stolen Sprint's subsidy investment in its Phones.

148.    Defendants' activities constitute unauthorized access in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(C).

149.    Defendants' conduct is intentional, malicious and willful.

150.    Pursuant to 18 U.S.C. § 1030(g), Sprint is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above, and because Defendants' conduct involves at least one of the factors identified in 18 U.S.C § 1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to Sprint and its customers as a result of Defendants' conduct during any one year period aggregated at least $5,000 in value.

## COUNT ELEVEN

### UNAUTHORIZED ACCESS WITH INTENT TO DEFRAUD
### 18 U.S.C. § 1030(a)(4)

151.    Sprint reasserts the allegations set forth in Paragraphs 1 through 51 above as though fully set forth herein.

152.    The Sprint Phones that are acquired by the Defendants directly and/or  from their co--conspirators in furtherance of the Bulk Handset Trafficking Scheme are loaded with codes/passwords that access: (a) Sprint's national telecommunications computer network to

make and receive wireless voice calls and to transmit data, and (b) Sprint's computer billing network (collectively, "Sprint's protected computer networks").

153.    In addition, manufacturers that produce wireless phones for Sprint install proprietary and confidential software, ordered and paid for by Sprint, on the Sprint Phones to lock the Phones to Sprint's protected computer networks and prevent the Phones from being used outside the Sprint network.[4]

154.    Sprint Phones are connected to and activated on Sprint's protected computer networks when purchased from Sprint.

155.    In furtherance of their Bulk Handset Trafficking Scheme, Defendants and/or their co-conspirators use fraud and misrepresentation to acquire Phones from Sprint, and, in so doing, void the agreement; as such, Defendants' access to the Phones and into Sprint's protected computer networks is not authorized in any way.

156.    Upon information and belief, once Defendants illicitly acquire the Sprint Phones, they use confidential codes/passwords to hack into and gain additional access to Sprint's protected computer networks.  This additional access into Sprint's protected computer networks is not authorized in any way.

157.    Upon information and belief, Defendants acquire the unlocking codes/passwords and methodologies for unlocking Sprint Phones by misrepresenting to Sprint either directly or through one of their co-conspirators that the Phones are being acquired and unlocked for a

---

[4]    Like all wireless carriers in the United States, Sprint has narrowly tailored policies in place to unlock Phones for legitimate customers in certain circumstances,  Defendants' and their co-conspirators' activities do not fall under these narrowly tailored exceptions and, therefore, their unlocking activities are unauthorized.  Further, to unlock a Sprint Phone, a confidential code/password must be entered into Sprint's protected computer networks.

legitimate purpose for use by legitimate consumers on Sprint's computer networks, when in fact, they are not.

158.    Upon information and belief, Defendants unlawfully hack into Sprint's protected computer networks using confidential codes/passwords to: (1) perform various tests to confirm that the Phone they are purchasing is, in fact, active on Sprint's wireless network; and/or (2) unlock the Sprint Phone, which requires the manipulation and oftentimes permanent deletion of the proprietary software that is installed in Sprint Phones and unauthorized changes to Sprint's protected computer networks, so that the Sprint Phone will operate on a wireless network other than Sprint's.

159.    Defendants are knowingly, intentionally, and with the intent to defraud, facilitating the unauthorized access of Sprint's protected computer networks.

160.    Defendants' access of Sprint's protected computer systems allows them to improperly steal Sprint's subsidy investment in its Phones.

161.    Sprint's protected computer systems are "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

162.    Defendants' activities substantially affect interstate commerce and communication in that the Phones are trafficked over the internet, throughout the United States, and around the world, and Sprint's computer system and telecommunications network are used in and affect interstate commerce and communication, and provide wireless telecommunications service pursuant to licenses issued by the Federal Communications Commission.

163.    Defendants' unauthorized access of Sprint's protected computer systems has caused and will continue to cause Sprint to suffer injury, with "damages" and "losses" – as those terms are

34

defined in Sections 1030(e)(8) and 1030(e)(11), respectively -- substantially in excess of $5,000 over a one-year period.

164.    With respect to loss, Sprint has lost subsidy investments in the trafficked Phones and spent well in excess of $5,000 investigating and assessing the possible impairment to the integrity of its protected computer systems, taking action to counteract Defendants' theft, and conducting a damage assessment regarding Defendants' collection and dissemination of Sprint Phones, as well as tracking down fraudulently sold Phones.

165.    With respect to damage, by infiltrating the Sprint computers systems and collecting and disseminating the illegally trafficked Phones, Defendants have substantially impaired the integrity of Sprint's systems in an amount in excess of $5,000.   Moreover, Defendants' actions have deprived Sprint of the means to control the quality of its product and service, and have stolen Sprint's subsidy investment in its Phones.

166.    Defendants' activities constitute unauthorized access in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4).

167.    Defendants' conduct is intentional, fraudulent, malicious and willful.

168.    Pursuant to 18 U.S.C. § 1030(g), Sprint is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above, and because Defendants' conduct involves at least one of the factors identified in 18 U.S.C § 1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to Sprint and its customers as a result of Defendants' conduct during any one year period aggregated is at least $5,000 in value.

## COUNT TWELVE

### FEDERAL TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114 [§ 32(1) of the Lanham Act]

169.    Sprint reasserts the allegations set forth in Paragraphs 1 through 51 above as though fully set forth herein.

170.    Defendants' and/or their co-conspirators' aforementioned conduct constitutes use of certain federally registered Sprint Marks without authorization in connection with their conspiracy to sell and offer for sale unlocked, counterfeit Sprint Phones, which downstream customers will discover have been altered from their original state and do not include the warranties, accessories, manuals and related items that constitute part of the Sprint Phone package.

171.    Defendants' and/or their co-conspirators' use of certain federally registered Sprint Marks in connection with the sale of Sprint Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' infringing products, and the relationship between Sprint Communications and Defendants.

172.    Defendants' and/or their co-conspirators' unauthorized use of certain federally registered Sprint Marks is likely to continue in the future, all to the great and irreparable damage to the business, reputation and goodwill of Sprint Communications.

173.    Defendants' and/or their co-conspirators' use of certain federally registered Sprint Marks in connection with the unlocked, counterfeit Sprint Phones, which do not include warranties, manuals, accessories and related items made part of the Sprint Phone package, constitutes a misappropriation of Sprint Communications' distinguishing and identifying federally registered trademarks that were created as a result of significant effort and expense by Sprint Communications over a long period of time.  Defendants' and/or their co-conspirators'

36

use of certain federally registered Sprint Marks evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendants have some connection, association or affiliation with Sprint Communications, and is likely to mislead the trade and public into believing that Defendants' products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by Sprint Communications.

174.    Defendants, in committing the foregoing acts in commerce, have damaged, and will continue to damage, Sprint Communications and the reputation and goodwill of Sprint Communications, and have been unjustly enriched and will continue to unjustly enrich themselves at the expense of Sprint Communications.  Sprint Communications is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

175.    Defendants' aforesaid acts constitute willful infringement of Sprint Communications' aforementioned federally registered trademarks in violation of 15 U.S.C. § 1114.

## <u>COUNT THIRTEEN</u>

### **FEDERAL COMMON LAW TRADEMARK INFRINGEMENT AND FALSE ADVERTISING**
### **15 U.S.C. § 1125 (a)(1)(A) and (B) [§ 43(a) of the Lanham Act]**

176.    Sprint reasserts the allegations set forth in Paragraphs 1 through 51 above as though fully set forth herein.

177.    Defendants' and/or their co-conspirators' aforementioned conduct constitutes use of the Sprint Marks without authorization in connection with their conspiracy to sell and offer for sale unlocked, counterfeit Sprint Phones, which downstream customers will discover have been

altered from their original state and do not include the warranties, accessories, manuals and related items that constitute part of the Sprint Phone package.

178.   Defendants' and/or their co-conspirators' use of the Sprint Marks in connection with the sale of unlocked, counterfeit Sprint Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' counterfeit products, and the relationship between Sprint and Defendants.

179.   Defendants' and/or their co-conspirators' unauthorized use of the Sprint Marks is likely to continue in the future, all to the great and irreparable damage to the business, reputation, and goodwill of Sprint.

180.   Defendants' and/or their co-conspirators' use of the Sprint Marks in connection with the unlocked, counterfeit Sprint Phones, which do not include warranties, manuals, accessories and related items made part of the Sprint Phone package, constitutes a misappropriation of the distinguishing and identifying Sprint Marks that was created as a result of significant effort and expense.  Defendants' and/or their co-conspirators' use of the Sprint Marks evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendants have some connection, association or affiliation with Sprint, and thus constitutes false designation of origin and is likely to mislead the trade and public into believing that Defendants' products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by Sprint.

181.   Defendants, in committing the foregoing acts in commerce, have damaged, and will continue to damage, Sprint and the reputation and goodwill of Sprint, and have been unjustly enriched and will continue to unjustly enrich themselves at the expense of Sprint.  Sprint

is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

182.    Defendants' use of the Sprint Marks in commercial advertising or promotion misrepresents the nature, characteristics, and/or qualities of their infringing products.  Defendants' advertising and promotion is false or misleading.  Defendants' advertising and promotion deceives or has the capacity to deceive consumers.  The deception and misrepresentations have a material effect on the purchasing decisions and affect interstate commerce.

183.    Defendants' activities constitute false designation of origin, false descriptions and representations, and false advertising in commerce in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B).

184.    Sprint is entitled to appropriate relief as prayed for hereinafter, including preliminary and permanent injunctive relief.

185.    Defendants knew or should have known that Plaintiffs are the owners and/or authorized licensees of the Sprint Marks and that Defendants had no legal right to use the Sprint Marks on their infringing products.  Defendants are engaged in and continue to engage in the alleged activities knowingly, willfully and deliberately, so as to justify the assessment of exemplary damages and an award of Plaintiffs' lost profits, Defendants' profits, and Plaintiffs' attorneys' fees.

**COUNT FOURTEEN**

**CONTRIBUTORY TRADEMARK INFRINGEMENT**

186.    Sprint reasserts the allegations set forth in Paragraphs 1 through 51 above as though fully set forth herein.

187.     By misappropriating and using at least one of the Sprint Marks in connection with the Bulk Handset Trafficking Scheme, Defendants knowingly aided and enabled distributors and/or sellers of their products to market them to members of the general public in a way that infringes at least one of the Sprint Marks by placing in the hands of distributors and/or sellers an instrument of consumer deception.

188.     Defendants' unlawful, unauthorized, and unlicensed sale of the unlocked Sprint Phones has contributed to the creation of express and implied misrepresentations that the Sprint Phones, as sold by Defendants, were created, authorized or approved by Sprint, and includes warranties.

189.     Upon information and belief, Defendants' conduct leads to post-sale confusion by causing consumers who purchase Sprint Phones altered by Defendants to believe that they are purchasing handsets approved by Sprint and containing original warranties.

190.     Defendants' conduct constitutes contributory infringement in violation of the Trademark Act.  Defendants' conduct is intentional, malicious and willful.

191.     Sprint has been damaged and continues to suffer damages as a result of Defendants' actions.

192.     There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' actions.

## COUNT FIFTEEN

### CONVERSION

193.     Sprint reasserts the allegations set forth in Paragraphs 1 through 51 above as though fully set forth herein.

194.     Defendants have and are engaged in acts of conversion in violation of the law of the State of New York.

195.     Sprint has the right to provide its Phones and wireless service to the public. Defendants have no such privilege or right.

196.     Defendants knew or should have known that they obtained the Phones through illegitimate means and had no legal right to advertise, use or resell them.

197.     Defendants are wrongfully interfering with Sprint's rights by engaging in the Bulk Handset Trafficking Scheme.

198.     Defendants intentionally and willfully exerted dominion and ownership over the Sprint Phones.

199.     Defendants' conversion of Sprint's property has caused and continues to cause Sprint to suffer irreparable injury, loss of reputation, and exemplary damages to be proved at trial.  Unless enjoined by this Court, Defendants will continue these acts, thereby causing Sprint further immediate and irreparable damage.

## COUNT SIXTEEN

### FALSE ADVERTISING IN VIOLATION OF
### N.Y. GEN. BUS. LAW § 350, ET SEQ.

200.     Sprint reasserts the allegations set forth in Paragraphs 1 through 51 above as though fully set forth herein.

201.     Defendants have used and are using the Sprint Marks in connection with their illegal Bulk Handset Trafficking Scheme.  Accordingly, Defendants have made and are making express and implied misrepresentations that their businesses, websites, products and/or services originate with, are associated with, and/or are sponsored or endorsed by Sprint in such a manner

as to create a likelihood of confusion among consumers, thereby inducing the belief that, contrary to fact, Defendants are sponsored or otherwise approved by or connected with Sprint.

202. In making representations that their products, services and advertisements originate with or are endorsed or sponsored by Sprint by displaying the Sprint Marks in their advertisements, the Defendants knew, or by the exercise of reasonable care should have known, that the statements were untrue or misleading and so acted in violation of N.Y. Gen. Bus. Law § 350, *et seq*.

203. Defendants' actions in connection with the illegal Bulk Handset Trafficking Scheme have caused specific and substantial injury to the public over and above ordinary trademark infringement as more particularly set forth above.

204. Defendants acted without consent from Sprint and Defendants' conduct has resulted in substantial harm to Sprint as more particularly set forth above.

205. Sprint requests permanent injunctive relief against Defendants pursuant to N.Y. Gen. Bus. Law § 350, *et seq*.

## COUNT SEVENTEEN

### DECEPTIVE ACTS AND PRACTICES
### IN VIOLATION OF N.Y. GEN. BUS. LAW § 349

206. Sprint reasserts the allegations set forth in Paragraphs 1 through 51 above as though fully set forth herein.

207. Defendants have and are engaged in fraudulent acts or practices in violation of the prohibition against deceptive acts and practices found at N.Y. Gen. Bus. Law § 349.

208. Defendants have used and are using the Sprint Marks in connection with the above-described Bulk Handset Trafficking Scheme in such a manner as to misrepresent the source, sponsorship, approval, and/or certification of their products and services.  The use of the

42

Sprint Marks by Defendants creates an unreasonable risk that present and potential consumers may falsely conclude that there exists some affiliation, connection, or association between and among Sprint and Defendants.

209.     Defendants' deceptive acts are directed at consumers, are misleading in a substantial and material way, and have caused injury to Sprint and its customers as more particularly set forth above.

210.     Defendants had actual knowledge of Sprint's rights at the time they decided to use the Sprint Marks in connection with the Bulk Handset Trafficking Scheme.  Thus, Defendants acted willfully and deliberately.

211.     Defendants' unfair business practices are of a recurring nature and harmful to consumers and the public at large, as well as to Sprint.  These practices constitute unlawful, unfair, fraudulent, and deceptive business practices, and unfair, deceptive, untrue, and misleading advertising.

212.     Defendants' actions in connection with the illegal Bulk Handset Trafficking Scheme have caused specific and substantial injury to the public over and above ordinary trademark infringement as more particularly set forth above.

213.     Defendants acted without consent from Sprint and Defendants' conduct has resulted in substantial harm to Sprint as more particularly set forth above.

214.     Sprint requests permanent injunctive relief against Defendants pursuant to N.Y. Gen. Bus. Law § 349.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all triable issues.

WHEREFORE, Plaintiffs, Sprint Solutions, Inc. and Sprint Communications Company L.P., respectfully request that this Court enter final judgment and permanent injunctive relief in favor of Plaintiffs and against Defendants, as follows:

(a) awarding Plaintiffs their compensatory, consequential, statutory and special damages including, without limitation, their lost profits, Defendants' profits, loss of goodwill and damage to its reputation, as well as exemplary damages, together with pre and post judgment interest, as provided by law;

(b) awarding Plaintiffs their reasonable attorneys' fees and costs associated with this action;

(c) granting permanent injunctive relief in favor of Plaintiffs and against Defendants enjoining Defendants from engaging in the unlawful practices described in this Complaint;

(d) requiring Defendants, pursuant to the Lanham Act, to deliver to Plaintiffs their entire inventory of phones and products bearing or infringing the Sprint Marks or a confusingly similar copy thereof; and

(e) granting such further relief as this Court deems just and proper.

Respectfully submitted this 5th day of June, 2014.

By: /s_____
   Natalie A. Napierala (NN4506)
   Email: nnapierala@CFJBLaw.com
   **CARLTON FIELDS JORDEN BURT, P.A.**
   405 Lexington Avenue, 29th Floor
   New York, New York 10174-0002
   Phone: (212) 785-2577
   Fax: (212) 785-5203

James B. Baldinger
Florida Bar No. 869899
Email: jbaldinger@CFJBLaw.com
*To be admitted pro hac vice*
Stacey K. Sutton
Florida Bar No. 0289530
Email: ssutton@CFJBLaw.com
*To be admitted pro hac vice*
**CARLTON FIELDS JORDEN BURT, P.A.**
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, Florida 33401
Phone: (561) 659-7070
Fax: (561) 659-7368

Gail E. Podolsky
Georgia Bar No. 142021
Email: gpodolsky@CFJBLaw.com
*To be admitted pro hac vice*
**CARLTON FIELDS JORDEN BURT, P.A.**
One Atlantic Center
1201 West Peachtree Street, Suite 3000
Atlanta, Georgia 30309
Phone: (404) 815-2714
Fax: (404) 815-3415

*Attorneys for Sprint Solutions, Inc. and
Sprint Communications Company L.P.*