UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
SPRINT SOLUTIONS, INC., and
SPRINT COMMUNICATIONS
COMPANY L.P.,

      Plaintiffs,    **MEMORANDUM AND ORDER**
                No. 14-CV-3539 (FB) (RER)

 -against-

iCELL GURU, INC., and DANIEL
YUSUPOV,

      Defendants.
-----------------------------------------------x

*Appearances:*
| For the Plaintiffs: | For the Defendants: |
|---|---|
| GAIL PODOLSKY, ESQ. | KEVIN K. TUNG, ESQ. |
| Carlton Fields Jordan Burt, P.A. | 136-20 38th Avenue, No. 3D |
| 1201 West Peachtree Street, Suite 3000 | Flushing, New York 11354 |
| Atlanta, Georgia 30309 | |

**BLOCK, Senior District Judge:**

  Plaintiffs, Sprint Solutions, Inc., and Sprint Communications Company L.P. (collectively, "Sprint"), allege that defendants, iCell Guru, Inc. and Daniel Yusupov, are unlawfully selling Sprint-branded iPhones. Although Sprint originally asserted seventeen claims, it has agreed to limit itself to five theories of liability. Two—registered trademark infringement and common-law trademark infringement—are based on the federal Lanham Act, 15 U.S.C. §§ 1051-1141n, and three—unfair competition, deceptive business practices, and unjust enrichment—on New York law.

*See* Minute Entry for Pretrial Conference (Apr. 15, 2016).

Sprint now seeks summary judgment on those claims. As set forth below, the Court concludes that Sprint is entitled to summary judgment on one aspect of its claims for trademark infringement. In all other respects, the motion is denied.

## I. Background

The relevant facts are drawn from the parties' Rule 56.1 statements and supporting documentation. They are undisputed except where indicated, in which case they are presented in the light most favorable to the defendants.

Sprint is the fourth-largest provider of wireless telephone service in the United States. It sells Apple iPhones and other wireless phones for use on its network. It holds several registered trademarks that it uses in connection with its phone sales.

Sprint sells phones at a substantial discount, intending to recoup the lost revenue though the sale of its wireless service. Sprint estimates—and the defendants do not dispute—that each iPhone it sells generates an average of $1,919 in revenue for Sprint.

To protect its business model, Sprint previously paid Apple and other manufacturers to install "locking" software that prevents phones sold by Sprint from being used on any other network.[1] In addition, each phone is assigned a unique

---

[1] In 2014, Sprint and other carriers voluntarily agreed to allow customers to unlock their phones at the end of their contracts. That practice was subsequently

electronic serial number ("ESN") during the manufacturing process. The ESN allows Sprint and other carriers to track usage of the phone.

iCell Guru buys and sells new and used Apple iPhones. It is not, however, an authorized Sprint retailer. Yusupov is iCell Guru's owner and president; he is responsible for most of iCell Guru's business operations, including buying, selling, advertising, packaging and shipping.

Some of the phones bought by the defendants have a "bad" ESN, meaning that, due to loss, theft and a variety of other reasons, Sprint will not activate the phone on its network. Others have been unlocked, making them available for use on any network. Defendants admit that they purchase phones with bad ESNs. Although they further admit that they purchase unlocked phones, they deny that any are Sprint phones.

The defendants sell most of the phones they purchase to wholesalers for eventual resale as insurance replacement phones. They also sell phones to individuals online through web sites such as amazon.com and eBay.com. The defendants often repackage the phones and offer them for sale without the original accessories and/or user's manual.

The defendants do not offer wireless service, and are not authorized to do so on

codified in the Unlocking Consumer Choice and Wireless Competition Act, Pub. L. 113-144 (Aug. 1, 2014).

behalf of Sprint. However, they use Sprint's name in advertising and invoicing to indicate that certain phones are intended to be used on Sprint's network.

## II. Federal Claims

### A. Liability for Trademark Infringement

15 U.S.C § 1114 prohibits the unauthorized use of a registered trademark. 15 U.S.C. § 1125(a) affords the same protection to "common-law" trademarks (marks that serve a source-identifying function, but are not registered). The purpose of both provisions is "to prevent consumer confusion regarding a product's source or sponsorship." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002). Thus, to prevail on a claim of infringement, whether for a registered trademark or an unregistered one, "a claimant must show that 'it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion.'" *Morningside Grp. v. Morningside Capital Grp.*, 182 F.3d 133, 138 (2d Cir. 1999) (quoting *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 477 (2d Cir. 1996)).

The defendants do not contest the ownership or validity of Sprint's trademarks. They argue, however, that there is no likelihood of confusion under the "first sale doctrine." The Ninth Circuit summed up the doctrine in *Sebastian International, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073 (9th Cir. 1995): "Beginning with *Prestonettes, Inc. v. Coty*, [264 U.S. 359 (1924)], courts have consistently held that, with certain well-defined exceptions, the right of a producer to control distribution of

4

its trademarked product does not extend beyond the first sale of the product." *Id.* at 1074. Thus, "the unauthorized sale of a trademarked article does not, without more, constitute a Lanham Act violation." *H.L. Hayden Co. v. Siemens Med. Sys.*, 879 F.2d 1005, 1023 (2d Cir. 1989).

"This doctrine does not hold true, however, when an alleged infringer sells trademarked goods that are materially different than those sold by the trademark owner." *Davidoff & Cie. S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301 (11th Cir. 2001). Because "[a] materially different product is not genuine and may generate consumer confusion about the source and the quality of the trademarked product . . . , the unauthorized resale of a materially different trademarked product can constitute trademark infringement." *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1072 (10th Cir. 2009). "A material difference is one that consumers consider relevant to a decision about whether to purchase a product." *Davidoff*, 263 F.3d at 1302. Although the Second Circuit has not spoken with the same clarity or frequency as some other circuit courts, it has applied the "material difference exception" in cases involving trademarked goods not intended for sale in the United States. *See Original Appalachian Artworks, Inc. v. Granada Elecs., Inc.*, 816 F.2d 68, 73 (2d Cir. 1987) ("Jesmar's dolls were not intended to be sold in the United States and, most importantly, were materially different from the Coleco Cabbage Patch Kids dolls sold in the United States.").

5

It is important to stress exactly what constitutes a genuine "Sprint" phone. Sprint does not manufacture iPhones, of course, and, as best the Court can glean, does not affix its marks to either the phones or their packaging. Rather, Sprint's marks are used in offering the phones *for use on Sprint's wireless network*. In other words, what makes a phone a "Sprint" phone is that it can be used on Sprint's network.

With that in mind, it is clear that phones with bad ESNs are materially different from genuine Sprint phones because they cannot, by definition, be used on Sprint's network. To that extent, the defendants' admitted use of "Sprint" in connection with such phones causes confusion and, therefore, constitutes infringement. This is true even though the incompatibility appears to stem from Sprint's practices, rather than some technological limitation. *See Original Appalachian Artworks, Inc.*, 816 F.2d at 73 (concluding Cabbage Patch Dolls sold abroad were materially different from United States dolls due to "the United States fulfillment houses' inability *or unwillingness* to process Jesmar's adoption papers or mail adoption certificates" (emphasis added)).

It is not clear, however, whether unlocked phones can be used on Sprint's network. The issue is further complicated by the 2014 change in the law and industry practice. *See supra* note 1. Given those changes, Sprint may not be able to refuse service for an unlocked phone even if it wanted to. The Court need not resolve the uncertainty at this juncture, however, because defendants deny that they sold any

6

unlocked Sprint phones. Thus, Sprint has not adduced sufficient undisputed facts to entitle it to judgment as a matter of law on that aspect of its infringement claims.

**B. Remedies for Trademark Infringement**

Sprint argues that it is entitled, as a matter of law, to both a permanent injunction and monetary relief—in the form of compensatory damages, punitive damages, prejudgment interest, attorney's fees and costs—on its infringement claims. Prejudgment interest, attorney's fees and costs must await the entry of a final judgment. And since the Court is denying summary judgment with respect to liability for selling unlocked Sprint phones, it obviously cannot yet award any damages or injunctive relief on that aspect of the claims.

The Court further concludes that it would be premature to award any relief with respect to the sale of phones with bad ECNs. Damages flowing from that conduct necessarily depend on the number of such phones sold, and Sprint has not established that number with any precision. Irreparable harm has traditionally been presumed to flow from a finding of infringement, but the Supreme Court's decision in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), has cast doubts on that presumption. *See Salinger v. Colting*, 607 F.3d 68, 74-75 (2010) (holding the *eBay* abrogated presumption of irreparable harm for copyright infringement); *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 511 F. App'x 81, 85 (2d Cir. Feb. 11, 2013) (declining to address effect of *eBay* in trademark cases). Although Sprint has presented evidence

7

of harm to its goodwill—in the form of customer complaints when phones purchased from the defendants could not be activated on Sprint's network—it is not sufficient to conclusively establish the extent or irreparability of the harm.

### III. State-Law Claims

### A. Unfair Competition

Unfair competition under New York law "encompasses a broad range of unfair practices," but the essence of the claim "is that the defendant has misappropriated the labors and expenditures of another and has done so in bad faith." *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 328-29 (E.D.N.Y. 2014) (internal quotation marks and citation omitted). Thus, a claim of unfair competition can be predicated on trademark infringement, coupled with a showing of bad faith. *See, e.g., Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers*, 894 F. Supp.2d 288, 326 (S.D.N.Y. 2012) ("This extra element of bad faith differentiates a common law claim for unfair competition from a trademark infringement claim under the Lanham Act."). Bad faith in this context refers to use of a trademark "to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." *Star Indus. v. Bacardi & Co.*, 412 F.3d 373, 388 (2d Cir. 2005). It is usually an inappropriate issue for resolution on summary judgment. *See American Int'l Group v. London Am. Int'l Corp.*, 664 F.2d 348, 353 (2d Cir. 1981).

For the reasons stated above, Sprint has established trademark infringement as a matter of law, at least with respect to the defendant's sale of phones with bad ESNs. However, the Court cannot say, as a matter of law, that the defendants acted in bad faith. The exploitive element present in a typical case of counterfeiting is not necessarily present here. It bears repeating that the defendants' use of Sprint's name was in connection with a phone's fitness for use on Sprint's network. It would actually run counter to the defendant's interests to advertise "Sprint" phones that could not be activated on that network. Thus, an intent to "sow confusion" cannot be inferred—at least not conclusively—merely from the use of Sprint's trademarks.

## B. Deceptive Business Practices and Unjust Enrichment

Sprint is not entitled to summary judgment on either its claim for deceptive business practices or its claim for unjust enrichment. The former is based on § 349 of the New York General Business Law, and "[i]t is well settled . . . that trademark or trade dress infringement claims are not cognizable under these statutes unless there is a specific and substantial injury to the public interest over and above ordinary trademark infringement or dilution." *National Distillers Prods. Co. v. Refreshment Brands, Inc.*, 198 F. Supp. 2d 474, 486-87 (S.D.N.Y. 2002). The latter is available "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777,

9

790 (2012) "Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." *Id.* Since the defendants are, at a minimum, liable for trademark infringement, the claim for unjust enrichment is duplicative.

Indeed, it appears that these two remaining claims fail as a matter of law. However, the defendants have not moved for summary judgment, and the Court may grant summary judgement *sua sponte* only "[a]fter giving notice and a reasonable time to respond." Fed. R. Civ. P. 56(f). It is also possible that Sprint will wish to withdraw the claims in light of the Court's other rulings.

## IV. Conclusion

Sprint's motion for summary judgment is granted with respect to its claims that the defendants' sale of Sprint phones with bad ESNs constitutes trademark infringement. The motion is denied with respect to Sprint's claims for trademark infringement with respect to the defendants' alleged sale of unlocked Sprint phones, and with respect to its claim for unfair competition. Those claims will proceed to trial, at which Sprint will have to prove, with respect to trademark infringement, that defendants sold unlocked phones using Sprint's name and, with respect to unfair competition, that they acted in bad faith. Sprint will also have to establish its entitlement to monetary and injunctive relief at trial.

With respect to the claims for deceptive business practices and unjust

enrichment, Sprint shall, within 10 days of this memorandum and order, either withdraw the claims or show cause why the Court should not grant summary judgment to the defendants and dismiss them.

**SO ORDERED.**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
June 7, 2016